## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

## ASTRA U.S.A., INC., Defendant.

## Civil Action No. 96–40133–NMG.

United States District Court,
D. Massachusetts.

June 27, 1996.

---

**514**

Nancy Dean Edmonds, EEOC, New York District Office, New York City, for Plaintiff.

John A.D. Gilmore, Richard L. Alfred, Hill & Barlow, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On June 7, 1996, plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Commission") commenced this action by filing, pursuant to 42 U.S.C. § 2000e–5(f)(2) and Fed.R.Civ.P. 65, an Application for an Order to Show Cause for the Issuance of a Temporary Restraining Order and Preliminary Injunction ("the Application").[1] The

Application requested that this Court enjoin defendant, Astra U.S.A., Inc. ("Astra") from: 1) entering into and/or enforcing certain provisions of a Settlement Agreement which prohibit employees or former employees from filing charges with the EEOC and/or assisting others who file charges with the Commission, and 2) taking any retaliatory employment action against any individuals who participate in any EEOC proceeding. Application at 1–2. This Court declined to issue a temporary restraining order on that date, but scheduled and conducted a hearing on the Commission's request for a preliminary injunction on June 14, 1996.[2]

The gravamen of the EEOC's Motion is that certain provisions in written Settlement Agreements between Astra and some of its former employees settling claims of sexual harassment violate §§ 604 and 710 of Title VII, 42 U.S.C. §§ 2000e–3 and 2000e–9, in that the agreements 1) prohibit former employees from communicating with or assisting the EEOC with respect to the Commission's investigation of charges of sexual harassment at Astra, and 2) expressly prohibit the settling employees from filing charges with the EEOC. Maintaining that such provisions not only "impede and interfere with EEOC investigation" but also "violate the anti-retaliation provisions" of Title VII, Application at ¶¶ 7, 8, the Commission seeks to enjoin the enforcement of such provisions with a preliminary injunction and to prevent Astra from entering into future agreements containing such provisions. For the reasons that follow, this Court concludes that injunctive relief is appropriate.

### I. *Findings of Fact*

Pursuant to Fed.R.Civ.P. 52(a), the Court makes the following findings of fact:

> 42 U.S.C. § 2000e–5(f)(2). Along with its application, the EEOC filed as supporting materials the affidavits of Robert L. Sanders ("Sanders"), the Director of the EEOC's Boston Office, and Brenda Choresi Carter ("Carter"), an investigator for the Commission.

**2.** On June 12, 1996, Astra filed an Opposition to the EEOC's Application, including an affidavit of Lynn Tetrault ("Tetrault"), defendant's Vice President of Human Resources. Since that time, this Court has received supplemental affidavits of Carter and Tetrault.

---

1. Section 706(f)(2) of the Civil Rights Act of 1964, as amended ("Title VII"), provides in relevant part:

 Whenever a charge is filed with the [EEOC] and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the [EEOC] ... may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with [Fed. R.Civ.P. 65].

1. The EEOC is an agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by section 706(f)(2). 42 U.S.C. § 2000e–5(f)(2).

2. At all relevant times, Astra has been a corporation doing business in the Commonwealth of Massachusetts and continuously has had at least fifteen employees. Astra is an employer engaged in an industry affecting commerce within the meaning of sections 701(b), (g) and (h) of Title VII.

3. EEOC's Boston Area Office is in the process of investigating three separate charges against Astra, at least two of which allege class-wide sexual harassment, Charge Nos. 161–95–0199, 161–95–0326 and 161–95–0296. Sanders Aff. ¶¶ 5, 6; Carter Aff. ¶ 2.

4. Beginning in or before January, 1993, Astra entered into certain confidential Settlement Agreements with employees and/or former employees who made claims of sexual harassment and/or witnessed sexual harassment at Astra.

5. Common to all of the Settlement Agreements is a provision waiving the right of the employee (or former employee) to file a charge with the EEOC or to assist others who have filed charges with the Commission. Supp. Carter Aff. ¶ 3, Exhs. 1–6.

6. At least six, but perhaps ten or more, such Settlement Agreements have been signed since January 1, 1993.[3] *See* Tetrault Aff. ¶ 3; Supp. Carter Aff. ¶¶ 3, 6. Astra has not entered into any such Agreements relating to claims of sexual harassment since January 5, 1996, and there currently are no such Agreements under negotiation. Tetrault Aff. ¶ 7.

7. The Settlement Agreements were thoroughly negotiated by Astra's counsel and each settling claimant's counsel. Tetrault Aff. ¶ 4. In exchange for settling and releasing their claims, the claimants received consideration in amounts ranging from $20,000 to $100,000. *Id.*

8. Redacted versions of several of the Agreements have been submitted by the parties to this Court. *See* Application Exh. 1; Tetrault Aff., Exh. A; Supp.Carter Aff., Exhs. 1–6. Although the specific wording of the Agreements vary, all contain provisions waiving the right of the employee/former employee to file a charge with the EEOC or to assist others who have filed charges with the Commission. Supp. Carter Aff. ¶ 3, Exhs. 1–6 thereto.[4]

9. Each of the Agreements also contains a confidentiality provision, providing that the settling claimant:

> agrees to keep the provisions and conditions of this Release confidential and that neither she, her agents (including her attorney, [ ]), servants, representatives, nor employees will disclose said provisions and conditions to any third party without the written consent of ASTRA. [The settling claimant and her attorney] hereby acknowledges and agrees that disclosure of any of the terms and conditions in this Agreement shall constitute a material breach of this Agreement. Violations of

---

3. Defendant's Vice President of Human Resources states that six such Agreements have been entered into since January 1, 1993. Tetrault Aff. ¶ 3. In a counter-affidavit, an EEOC investigator declares that, although Astra has provided her with the names of employees who signed Settlement Agreements resolving claims of sexual harassment, she knows that "there are additional individuals who signed such Agreements other than those who made formal complaints of sexual harassment [with the Company]." Supp.Carter Aff. ¶ 6. Additionally, the investigator states that she "know[s] now that individuals who witnessed sexual harassment and/or those who refused to take action against those who complained of sexual harassment also signed such Agreements." *Id.*

4. For example, one Settlement Agreement provides that:

> [The employee] further covenants and agrees not to file or assist in any way anyone else who files any claim, complaint, or charge nor institute any lawsuit against ASTRA, its officers, directors, agents, or employees arising out of her employment or termination of employment with ASTRA, including, but not limited to, any claim, complaint, charge, or lawsuit under the Civil Rights Act of 1964, Americans with Disabilities Act, the Equal Pay Act, the Rehabilitation Act, the Massachusetts Fair Employment Practice [sic] Act, any other federal or state law or statute, or any claim which could be alleged under the common law.

Tetrault Aff., Ex. A.

this provision shall give ASTRA the right to enjoin such conduct in any court of competent jurisdiction, to discontinue performance of its obligations under the terms of this Agreement, and to seek repayment of any consideration already paid under this Agreement.

Supp.Carter Aff., Exhs. 1–3, 6; Tetrault Aff., Exh. A.

10. During the course of its investigations into the charges of classwide sexual harassment, the EEOC has unsuccessfully attempted to interview witnesses who have signed Astra Settlement Agreements and who have stated that the Agreements prohibited them from cooperating with EEOC investigations. Carter Aff. ¶¶ 4, 7. In one instance, an EEOC investigator spoke with a former Astra employee who advised the official that she had information to provide, "but was unable to talk due to a confidential settlement agreement she had entered into with Astra." Carter Aff. ¶ 4. When the investigator asked whether the Agreement prohibited the settling claimant from assisting in the investigation, the former employee responded affirmatively. *Id.* Other employees have expressed similar reluctance to talk with EEOC investigators but refuse to divulge whether they have signed similar releases. Carter Aff. ¶ 6.

11. The ability of EEOC investigators to obtain witness cooperation and to complete the investigation into the charges of sexual harassment at Astra has been impaired by the Settlement Agreements and the "resultant fear by employees/former employees" caused by those Agreements. Carter Aff. ¶¶ 4, 6–8. Upon conducting a preliminary investigation into the charges of classwide sexual harassment at Astra, the EEOC has concluded that "prompt judicial action is necessary to carry out the purposes of Title VII." Sanders Aff. ¶ 15.

12. On May 14, 1996, Astra received a Request for Information from the EEOC concerning one of the three pending charges filed against the company. The questionnaire requested a variety of information, including a list of all female sales employees since January 1, 1993 and copies of internal complaints of sexual harassment. An Astra official responded by calling the EEOC's Boston office and agreeing to provide the company's response and accompanying documents in two phases. Tetrault Aff. ¶ 10. Although the EEOC did receive documents on May 21 and June 11, 1996, defendant has failed to provide the Commission with all of the information requested. Supp.Carter Aff. ¶ 4.

13. In a letter from the EEOC to Astra, the Commission asserted that the Settlement Agreements entered into between the company and its employees/former employees prevented those persons from providing information to the EEOC. Astra responded with a letter, dated June 3, 1996, stating that the company:

> [did] not interpret any settlement agreement as preventing any former employee from communicating with the EEOC concerning any of its investigations. Astra fully intends to cooperate with the EEOC with respect to its investigation and will not seek to enforce any settlement agreement or release against any current or former employee on the grounds that the employee communicated with the EEOC regarding an ongoing investigation.

Tetrault Aff. ¶ 12, Exh. D. Astra's letter also authorized the EEOC to share the letter with any employee or former employee with whom it had contact. *Id.*

14. On June 18, 1996, after the hearing held in connection with the EEOC's motion for a preliminary injunction, Astra sent letters to six employees (or their counsel) who had entered into Agreements settling claims of sexual harassment since January 1, 1993.[5] Those letters provided that:

> Astra is actively encouraging all current and former employees to cooperate with the EEOC in its investigation. Consistent with that commitment, I am writing to inform [you] that [you] should feel free to communicate with the EEOC. To the extent that [your] agreement with Astra

---

**5.** Astra sent similar letters to six plaintiffs in another action previously filed against it in this District, *Dorn, et al. v. Astra USA Inc., et al.,* No. 96–11124.

could be interpreted to limit [your] ability to communicate with the EEOC regarding its investigation, Astra disavows that interpretation.

Supp.Tetrault Aff. ¶¶ 3, 4 & Exhs. A, B.

15. In a supplemental affidavit, an EEOC investigator observes that:

> [she is] continuing to have trouble speaking with Astra's former and present employees. However, [she has] spoken with a few additional employees, and received an anonymous phone call from a "current Astra employee" seeking to provide [her] with information.

Supp.Carter. Aff. ¶ 7. Carter concludes that the information available to her leads her to believe that "sexual harassment is ongoing at Astra and that individuals are being subjected to retaliation as a result of their complaints of [such] harassment." *Id.*

## II. *Conclusions of Law*

The EEOC argues that, because it is seeking injunctive relief pursuant to § 706(f)(2) of Title VII, it need not satisfy the traditional four-part standard for injunctive relief. Rather, plaintiff asserts that the "statutory presumption" standard is applicable to its motion, whereby preliminary relief is appropriate upon a showing that: 1) charges of sexual harassment have been filed, 2) after conducting a preliminary investigation, the EEOC has determined that prompt judicial action is necessary to carry out the purposes of Title VII, and 3) a prima facie case has been established that the defendant has committed or is likely to commit serious violations of the Act, which will, if not enjoined, frustrate its purposes. In support of its contention, the EEOC cites, *inter alia, United States v. Diapulse Corp.* 457 F.2d 25, 27 (2d Cir.1972) and *EEOC v. Union Bank of Arizona,* 12 Fair Empl. Prac. Cas. (BNA) 527, 529–30 (D.Ariz.1976).

■ Although the issue is not free of doubt, see *EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037, 1043 (6th Cir.1981), this Court concludes, for three reasons, that the traditional four-part test should control:

1. The fact that § 706(f)(2) requires the EEOC to seek preliminary relief pursuant to Fed.R.Civ.P. 65 and does not include language limiting the Court's discretion to deny the requested relief "indicates that [Congress] intended the courts to exercise their traditional discretion in ruling on these actions." *Anchor Hocking,* 666 F.2d at 1043.

2. While the "irreparable harm" element of the injunction inquiry is, arguably, discounted under the "statutory presumption" standard, the Court of Appeals for the First Circuit has emphasized the importance of that factor. *See Gately v. Commonwealth,* 2 F.3d 1221, 1232 (1st Cir.1993) ("a federal court cannot dispense with the irreparable harm requirement in affording injunctive relief"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994).

3. Even if this Court were to employ the standard offered by the Commission, i.e., determine whether a prima facie case exists that Astra "has committed or is likely to commit serious violations of the Act which will, if not enjoined, frustrate its purposes," it would necessarily have to consider many of the same issues confronted under the traditional standard.

■ Consequently, in ruling on the motion for a preliminary injunction, this Court will apply the familiar four-part standard and consider whether the EEOC has established that: 1) it is likely to succeed on the merits, 2) there exists, absent injunctive relief, a significant risk of irreparable harm, 3) the balance of hardship tilts in its favor, and 4) granting the injunction will not negatively affect the public interest. *TEC Engineering Corp. v. Budget Molders Supply Inc.,* 82 F.3d 542, 544 (1st Cir.1996); *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). Those considerations are discussed *seriatim.*

### A. *Likelihood of Success on the Merits*

■ Likelihood of success on the merits is the first factor to be considered in connection with the grant or denial of preliminary relief. The EEOC advances two arguments in support of such a likelihood: 1) the waivers of a right to file a charge with the EEOC contained in the Settlement Agreements are void as against public policy, and 2) enforce-

ment of such waivers would violate the anti-retaliation provisions of Title VII. Because this Court concludes that the waivers do violate public policy, there is no need to reach the Commission's anti-retaliation argument.[6]

 In determining whether a particular provision is void as against public policy, this Court must weigh competing policy considerations and apply them to the specific circumstances of the instant case. *See Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). "A promise is unenforceable if the interest in its enforcement is outweighed *in the circumstances* by a public policy harmed by enforcement of the agreement." *Id.* at 392, 107 S.Ct. at 1191 (emphasis supplied). In the case at bar, the competing interests at issue are the public interest in private dispute settlement and the public interest in EEOC enforcement of Title VII. *See EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1090 (5th Cir.1987); *Hoffman v. United Telecommunications, Inc.*, 687 F.Supp. 1512 (D.Kan.1988).

 Settlement of employment disputes by the parties is, unquestionably, a legitimate policy, one which is to be encouraged and to be taken into account in this Court's analysis. *See Runyan· v. National Cash Register Corp.*, 787 F.2d 1039, 1044–45 (6th Cir.), *cert. denied*, 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). That policy does not, however, trump the public interest in enforcing Title VII for the purpose of righting congressionally-recognized wrongs.

Astra's contention that the interest in private dispute settlement outweighs the public interest in the EEOC's investigatory responsibilities and enforcement of Title VII rests on two grounds: 1) the EEOC's own regulations, which defendant asserts "strongly fa-

vors" the private settlement of disputes, and 2) the reasoning of the District Court in *Hoffman v. United Telecommunications, Inc.*, 687 F.Supp. 1512 (D.Kan.1988). This Court rejects Astra's contention for the countervailing reasons stated below.

As an initial matter, the EEOC regulation cited and relied upon by defendant, 29 C.F.R. § 1601.20, provides merely that, "[p]rior to the issuance of a determination as to reasonable cause the [EEOC] *may* encourage the parties to settle the charge on terms that are mutually agreeable." (emphasis supplied). The language of that regulation can hardly be deemed an affirmation of public policy sufficient to overcome the acknowledged public interest in the enforcement of Title VII.

Astra's reliance upon *Hoffman* is similarly unavailing. In that case, the District Court determined that an agreement "prohibiting plaintiff or her legal counsel from any further participation in [an ongoing] case" did not violate "[t]he public policy against denying the EEOC information concerning employment discrimination...." 687 F.Supp. at 1514. In *Hoffman*, however, unlike the case at bar, the EEOC had been conducting an investigation of the defendant employer for over a decade, and the settling claimant had been deposed on several occasions and had already testified concerning everything she knew relevant to the investigation. *Id.* at 1513–14. The *Hoffman* Court itself recognized the uniqueness of the facts before it by the following observation:

> [This] court certainly does not intend to encourage settlements such as the one in this case. Today's decision rests solely on the peculiar facts of this lawsuit, and even a slightly different factual situation could greatly affect the court's disposition on the merits. Simply put, under the circumstances of this case, a settlement agree-

---

**6.** This Court notes, in passing, that were it to reach the EEOC's second argument, at least two factors would mitigate against the Commission's contention: 1) ripeness—the record is devoid of evidence suggesting that Astra has taken steps to retaliate against any individual for seeking to file a claim with the EEOC, *cf. Hoffman v. United Telecommunications, Inc.*, 687 F.Supp. 1512, 1514 (D.Kan.1988); and 2) the Circuit Courts of Appeals are divided on the issue as to whether the protective reach of Title VII's anti-retaliation

provisions extends to former employees, as opposed to current employees and applicants for employment. *Compare Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 198–200 (3d Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994) (Title VII protects former employees), *with Robinson v. Shell Oil Co.*, 70 F.3d 325, 330 (4th Cir.1995), *cert. granted*, — U.S. —, 116 S.Ct. 1541, 134 L.Ed.2d 645 (1996) (Title VII's anti-retaliation provisions do not extend to post-employment retaliation).

ment limiting the plaintiff's cooperation in culminating the twelve-year old investigation is not void as against public policy. *Id.* at 1514–15.

A case which is more analogous to our case is *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1090 (5th Cir.1987), in which the Court of Appeals for the Fifth Circuit held that "a waiver of the right to file a charge [with the Commission] is void as against public policy." 821 F.2d at 1090. The Court noted that the purpose of filing a charge is not necessarily to seek recovery from the employer but, rather, to inform the EEOC of possible discrimination. *Id.* at 1089; *see also EEOC v. Shell Oil Co.*, 466 U.S. 54, 68, 104 S.Ct. 1621, 1631, 80 L.Ed.2d 41 (1984). The *Cosmair* Court aptly noted that:

> Allowing the filing of charges to be obstructed by enforcing a waiver of the right to file a charge could impede EEOC enforcement of the civil rights laws.... A charge not only informs the EEOC of discrimination against the employee who files the charge or on whose behalf it is filed, but also may identify other unlawful company actions.... When the EEOC acts on this information, "albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." *General Telephone Co. v. EEOC*, 446 U.S. 318, 326, 100 S.Ct. 1698, 1704, 64 L.Ed.2d 319 (1980). We hold that an employer and employee cannot agree to deny to the EEOC the information it needs to advance the public interest.

821 F.2d at 1090 (internal citations omitted).

The EEOC properly observes that, as the agency responsible for the enforcement of employment discrimination laws, the Commission serves as a forum wherein employees are free to file allegations of discrimination, "regardless of whether employers maintain that those allegations have been 'settled' by 'agreement' between the parties." EEOC's Memorandum at 9. Because it is authorized to investigate allegations only when a timely

charge has been filed, *see* 29 C.F.R. § 1601.6 *et seq.*, the EEOC relies upon the public to provide it with information (i.e., charges) about allegedly discriminatory practices. Moreover, it is clear that the filing of a charge often helps identify individuals—other than the charging party—who have suffered discrimination.[7] Finally, a charge may provide the means by which the Commission discovers additional victims of discrimination in the workplace. *Cf. Cosmair,* 821 F.2d at 1087 (plaintiff's charge raised not only the issue of the employer's discriminatory termination of the complaining party, but also that the company had a discriminatory policy which harmed other older workers as well).

▮ In sum, specific provisions of the Astra Settlement Agreements prevent a settling party from communicating with the EEOC. That prohibition may deprive the Commission of valuable information about alleged discrimination against either the settling party or his or her co-workers. The Settlement Agreements reward those employees most likely to have relevant information about the existence and scope of sexual harassment at the company for withholding the same from the EEOC. Because an employer and an employee cannot agree to withhold information that the Commission needs to advance the public interest, a prohibition against such communication or the filing of a charge is void as against public policy. *See Cosmair,* 821 F.2d at 1090.

### B. *Irreparable harm*

▮ The second factor for this Court to consider in the context of a motion for a preliminary injunction is whether there exists, absent injunctive relief, a significant risk of irreparable harm. *Moteles v. University of Pennsylvania,* 730 F.2d 913, 918 (3d Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984); *EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037, 1043 (6th Cir.1981). The irreparable injury which must be established pursuant to § 706(f)(2) may be either to the EEOC or to the charging party. *An-*

---

**7.** Section 706 of Title VII permits a charge to be filed "on behalf of a person claiming to be aggrieved." 42 U.S.C. § 2000e–5(b).

*chor Hocking,* 666 F.2d at 1043; *EEOC v. Bay Shipbuilding Corp.,* 480 F.Supp. 925, 928 (E.D.Wis.1979). The Commission may demonstrate irreparable harm by showing that its ability to enforce Title VII or to investigate a pending charge has been impeded by the "chilling" effect which the Settlement Agreements have on employees' willingness to cooperate in an investigation. *Cf. Anchor Hocking,* 666 F.2d at 1043; *Bay Shipbuilding,* 480 F.Supp. at 928.

This Court agrees with the EEOC that a likelihood of irreparable harm exists in the present case because the Commission's ability to investigate charges of discrimination and to enforce anti-discrimination laws has been and continues to be impeded by the chilling effect caused by the offending provisions of the Agreements. This Court has found that EEOC investigators have attempted, unsuccessfully, to interview witnesses who have signed Settlement Agreements and feel constrained thereby from cooperating with the Commission's investigation. The restrictions in the Settlement Agreements, if complied with, cause or potentially cause harm to a wide variety of parties, including the EEOC, the general public, Astra employees who have filed charges and current/former employees who have signed the Agreements. Specifically:

1. The EEOC is harmed in that it is unable to carry out its Congressional mandate to enforce anti-discrimination laws, and the general public is, consequently, denied the enforcement of such laws.

2. Individuals who have already filed charges with the Commission are denied the opportunity to have the EEOC investigate their allegations fully, accurately and completely.

3. Current Astra employees who may be subjected to ongoing sexual harassment and/or retaliation are harmed because the EEOC's investigation, and, consequently, any remedial action which might result from such an investigation, has been impeded.[8]

Astra suggests that the letters it sent on June 18, 1996 (described in ¶ 14 of Part I, *supra* ), together with its invitation to the EEOC promptly to inform the company of any other employees who the Commission believes should receive a similar letter, eradicates any possible harm. This Court disagrees. Indeed, it is Astra, not the EEOC, which possesses all relevant information and is therefore better able to determine which employees and/or former employees have signed the subject Settlement Agreements. Accordingly, this Court concludes that the EEOC has demonstrated a significant risk of irreparable harm absent preliminary relief.

### C. *Balance of hardships*

This Court similarly concludes that the benefits gained by entering an injunction outweigh any burden thereby imposed upon Astra. By removing the obstacles encountered by the EEOC in its investigation, an injunction will benefit both the general public and the EEOC as the Commission endeavors to fulfill its Congressional mandate to investigate alleged Title VII violations. Furthermore, Astra employees will benefit because the Commission will have complete access to information about alleged instances of discrimination, thereby enabling it more readily to address and resolve the charges. In contrast, the burden imposed upon Astra by the issuance of an injunction, i.e., the invalidation of certain provisions of its Settlement Agreements, is comparatively slight.

### D. *Public interest*

The final factor for consideration in connection with the issuance of a preliminary injunction is whether it would negatively affect the public interest. *TEC Engineering Corp.,* 82 F.3d at 544. There is no need to dwell on this point. For the reasons discussed more fully above, this Court concludes that the public interest will be advanced by the issuance of such relief. The public has a manifest interest in ensuring that the EEOC's ability to investigate fully charges of

---

**8.** The EEOC also properly points out that irreparable harm "is shown regarding the claims of potential class members who would be covered under an EEOC finding of discrimination stem-

ming from an earlier charge than [those] currently under investigation." EEOC Memorandum at 12.

employment discrimination is not thwarted. As the Supreme Court has observed, "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 69, 104 S.Ct. 1621, 1631, 80 L.Ed.2d 41 (1984).

### III. *Scope of Injunctive Relief*

 A few observations are appropriate regarding the scope of the injunctive relief to be imposed by this Court. The issuance of a preliminary injunction in this case does not, in any way, disturb the principle that private settlements of Title VII causes of action are enforceable, so long as the employee's waiver is voluntary and knowing. *See United States v. Allegheny–Ludlum Industries, Inc.*, 517 F.2d 826, 853, 861 (5th Cir.1975) (upholding waiver of Title VII causes of action), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976); *Rogers v. General Electric Co.*, 781 F.2d 452, 454 (5th Cir.1986). Although an employee cannot waive his or her right to file a charge with the EEOC (i.e., to provide information to the Commission), the employee nevertheless remains free to waive the right to recover damages both in his or her own lawsuit and in a lawsuit brought by the EEOC on the employee's behalf. *See EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1543 (9th Cir.1987) (backpay claim by EEOC on behalf of employee who had entered into private settlement of her Title VII claim with her employer was moot); *Rogers*, 781 F.2d at 454 (EEOC dismissed Title VII charge of settling employee "based on [the Commission's] conclusion that [the employee], by signing the release, had waived all Title VII claims against [the employer]"). Moreover, "the fact that a waiver of the right to file a charge is void does not invalidate a waiver of a cause of action with which it is conjoined." *Cosmair*, 821 F.2d at 1091 (citing Restatement (Second) of Contracts, § 184(1)).

Applying the foregoing principles to the case at bar, it is clear that the Settlement Agreements at issue here contain certain provisions which violate public policy and, as such, are void. Apart from those offending provisions, however, the remainder of the Settlement Agreements are valid and enforceable, i.e., in exchange for valuable consideration ranging from $20,000 to $100,000, the settling claimants have waived their rights to further damages which might have been recovered by way of personal Title VII lawsuits or suits brought on behalf of the claimants by the Commission. Furthermore, provisions of the Agreements which require settling claimants to maintain the confidentiality of: 1) the consideration received, 2) proprietary information to which they had access while employed and 3) information which may now be disclosed to the Commission as a result of the injunction to be imposed, remain valid and enforceable.

### ORDER

For the foregoing reasons, and until further order of the Court, the defendant Astra U.S.A., Inc., its officers, agents, servants, employees and attorneys, and all persons in active concert or participation with it, are hereby **RESTRAINED** and **ENJOINED** from entering into or enforcing provisions of any Settlement Agreement which prohibit current or former employees from filing charges with the EEOC and/or assisting the Commission in its investigation of any charges. Astra shall provide a copy of this injunction to all current and former employees who have signed Settlement Agreements to assure them of notification of their rights set forth herein.

**SO ORDERED.**