USCA1 Opinion

 

 October 11, 1996 UNITED STATES COURT OF APPEALS October 11, 1996 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-1751 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, Appellee, v. ASTRA USA, INC., Defendant, Appellant. _________________________ ERRATA SHEET ERRATA SHEET The opinion of this court issued on September 6, 1996, is corrected as follows: On page 11, line 10 change "(1979)" to "(1980)" On page 17, line 12 change "(1978)" to "(1979)" UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-1751 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, Appellee, v. ASTRA USA, INC., Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ _________________________ Before Selya and Cyr, Circuit Judges, ______________ and Tauro,* District Judge. ______________ _________________________ Richard L. Alfred, with whom John A.D. Gilmore, Joshua M. __________________ _________________ _________ Davis, and Hill & Barlow were on brief, for appellant. _____ _____________ Arthur G. Telegen, William B. Koffel, Foley, Hoag & Elliot _________________ __________________ _____________________ LLP, John H. Mason, Robert B. Gordon, Ropes & Gray, John F. ___ ______________ _________________ _____________ _______ Welsh, Testa, Hurwitz & Thibeault LLP, Wilfred J. Benoit, and _____ ________________________________ __________________ Goodwin, Procter & Hoar LLP on brief for Boston Area Management ____________________________ Attorneys Group, amicus curiae. Paul D. Ramshaw, with whom C. Gregory Stewart, General _________________ ___________________ Counsel, Gwendolyn Young Reams, Associate General Counsel, _______________________ Vincent J. Blackwood, Assistant General Counsel, and Gail S. _____________________ ________ Coleman were on brief, for appellee. _______ Michael Roitman, Shapiro Grace Haber & Urmy, Richard T. ________________ _____________________________ ___________ Seymour, Teresa A. Ferrante, Helen Norton, and Ozell Hudson, Jr. _______ __________________ ____________ __________________ on brief for Lawyers Committee for Civil Rights Under Law, Women's Legal Defense Fund, Massachusetts Black Lawyers Association, and Lawyers Committee for Civil Rights Under Law of the Boston Bar Association, amici curiae. _________________________ September 6, 1996 _________________________ _______________ *Of the District of Massachusetts, sitting by designation. SELYA, Circuit Judge. In this case of first SELYA, Circuit Judge. _______________ impression, defendant-appellant Astra USA, Inc. ("Astra" or "the company") challenges a preliminary injunction restraining it from entering into or enforcing settlement agreements containing provisions that prohibit settling employees both from filing charges of sexual harassment with the Equal Employment Opportunity Commission ("EEOC" or "the Commission") and from assisting the Commission in its investigation of any such charges.1 For the reasons that follow, we affirm the preliminary injunction in part and vacate it in part. I. BACKGROUND I. BACKGROUND The EEOC is currently investigating three sexual harassment charges filed against Astra. At least two of these charges allege class-wide improprieties. The controversy before us arose when the Commission found its investigation hampered by certain settlement agreements entered into between Astra and sundry employees who theretofore had pursued sexual harassment claims. The problem first surfaced when an EEOC investigator, Brenda Choresi Carter, spoke with a former Astra employee on May 7, 1996. According to Carter, the employee stated that she possessed relevant information but was unable to disclose it "due to a confidential settlement agreement that she had entered into  ____________________ 1The settlement agreements involve, and the district court's injunction covers, both employees and former employees of Astra. It is unnecessary to distinguish between these two groups for purposes of this appeal. Consequently, we use the collective noun "employees" to encompass both past and present employees. 3 with Astra." Although this conversation supplies the EEOC's most concrete proof that Astra's settlement agreements are hindering its probe, the Commission also points to other evidence hinting that the agreements may be stifling potential sources. One employee who expressed reluctance about speaking with an EEOC investigator refused to say whether she had entered into a settlement agreement. Then, too, when the EEOC contacted ninety employees and requested information, only twenty-six replied. Although the Commission finds this widespread unresponsiveness to be sinister, its cause is unproven. This is the extent of the hard evidence as to the impact of the settlement agreements on the EEOC's investigation. In all events, the Commission has not unleashed its subpoena power, see 42 U.S.C. 2000e-9 (1994) (incorporating by reference ___ 29 U.S.C. 161), to compel any recalcitrant employee to furnish relevant information. The record reveals that Astra has entered into at least eleven settlement agreements the exact number remains uncertain with employees who claimed to have been subjected to, or to have witnessed, sexual harassment. The details of these agreements vary, but they all contain versions of four provisions that are relevant to the disposition of this appeal. First, the settling employee agrees not to file a charge with the EEOC. Second, the settling employee agrees not to assist others who 4 file charges with the EEOC.2 Third, the settling employee releases all employment-related claims against Astra and those in privity with Astra (including Astra's management). Fourth, the settling employee assents to a confidentiality regime under which she is barred from discussing the incident(s) that gave rise to her claim and from disclosing the terms of her settlement agreement. After the EEOC learned of Astra's artful draftsmanship, it asked the company to rescind those portions of the settlement agreements that prohibited individuals from filing charges with the Commission ("non-filing provisions") and from aiding the Commission's investigations ("non-assistance provisions"). Astra defended both the non-filing and the non-assistance provisions  ____________________ 2While the precise phraseology of the non-filing and non- assistance covenants varies from pact to pact, the import is the same. By way of illustration, a representative agreement contains a covenant binding the settling employee "not to file or to assist in any way anyone else who files any claim, complaint, or charge nor institute any lawsuit against ASTRA, its officers, directors, agents, or employees arising out of her employment or termination of employment with ASTRA, including, but not limited to, any claim, complaint, charge, or lawsuit under the Civil Rights Act of 1991, Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act, the Massachusetts Fair Employment Practice Act, any other federal or state law or statute, or any claim which could be alleged under the common law." In another iteration, some settlement agreements confirm that the settling party will not "voluntarily provide any assistance" to persons asserting claims against Astra. While the non-assistance provisions have two facets they purport to bar assistance to both the EEOC and fellow employees  the Commission so far has challenged only that facet of the non- assistance provisions which purports to prevent settling employees from communicating with the Commission. Since the EEOC has not yet objected to that part of the non-assistance provisions which precludes a settling employee from aiding another employee in preferring a claim against Astra, we take no view of that aspect of the matter. 5 but added that it "do[es] not interpret any settlement agreement as preventing any . . . employee from communicating with the EEOC concerning any of its investigations." Astra's concession on the right of settling employees to communicate with the Commission remains somewhat tenebrous: at oral argument, the company's counsel suggested that employees must await a subpoena before sharing information with the EEOC. At any rate, Astra steadfastly maintains that employees who have signed settlement agreements may not volunteer any information to the Commission that is beyond the scope of an ongoing investigation. Dissatisfied with Astra's response, the EEOC filed suit seeking injunctive relief pursuant to section 706(f)(2) of Title VII, 42 U.S.C. 2000e-5(f)(2). Without convening an evidentiary hearing, the district court granted the request for a preliminary injunction and enjoined Astra for the time being "from entering into or enforcing provisions of any Settlement Agreements which prohibit current or former employees from filing charges with the EEOC and/or assisting the Commission in its investigation of any charges." EEOC v. Astra U.S.A., Inc., 929 F. Supp. 512, 521 (D. ____ __________________ Mass. 1996). The court also directed Astra to "provide a copy of this injunction to all current and former employees who have signed Settlement Agreements to assure them of notification of their rights set forth herein." Id. Astra appealed and ___ requested interim relief. We stayed the operation of the injunction (subject to certain conditions not relevant here) and expedited appellate proceedings. 6 II. ANALYSIS II. ANALYSIS We first delineate certain legal standards (a task that, in this instance, requires us to resolve a threshold question). We then evaluate the injunction as it affects the non-assistance and non-filing provisions, respectively. A. The Applicable Preliminary Injunction Standard. A. The Applicable Preliminary Injunction Standard. ______________________________________________ In the typical case, a party seeking preliminary injunctive relief must prove: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or, at least, a lack of friction) between the injunction and the public interest. See Narragansett ___ ____________ Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991). Here, _____________ ________ however, the EEOC asserts that Congress, by enacting section 706(f)(2) of Title VII, specifically authorized the agency to seek injunctive relief in the public interest.3 Based on this circumstance, the EEOC argues that it need not satisfy the traditional test for preliminary injunctive relief but, instead, must only meet the built-in criterion that section 706(f)(2)  ____________________ 3The statute provides in material part: Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission . . . may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. 42 U.S.C. 2000e-5(f)(2). 7 itself establishes. On this approach an injunction is appropriate as long as the Commission, after conducting a preliminary investigation of a pending charge of discrimination, (1) determines that prompt judicial intervention is essential to carry out the purposes of Title VII, and (2) makes out a prima facie case that the defendant has committed (or is likely to commit) serious violations of Title VII which, if not enjoined, will frustrate the Act's purposes. In practice, the difference between the two approaches may be more apparent than real. The EEOC, however, sees two key distinctions: under its approach the public interest prong becomes a foregone conclusion (for the Commission is itself the standard-bearer for the public interest), and, in addition, a somewhat lessened showing of irreparable harm may be adequate to justify preliminary injunctive relief. The circuits are in some disarray regarding whether the EEOC must meet the traditional four-part test for injunctive relief. See, e.g., Baker v. Buckeye Cellulose Corp., 856 F.2d ___ ____ _____ ________________________ 167, 169 (11th Cir. 1988) (holding that an allegation of a Title VII violation establishes a rebuttable presumption of irreparable injury); EEOC v. Pacific Press Pub. Ass'n, 535 F.2d 1182, 1187 ____ _________________________ (9th Cir. 1976) (suggesting that "the usual requirement of irreparable injury is relaxed" when the EEOC seeks injunctive relief pendente lite); cf. EEOC v. Cosmair, Inc., 821 F.2d 1085, ________ ____ ___ ____ _____________ 1090 (5th Cir. 1986) (holding, in an ADEA case, that "[w]hen an injunction is expressly authorized by statute and the statutory 8 conditions are satisfied, the movant need not establish specific irreparable injury to obtain a preliminary injunction"). Amidst these subtly shaded solutions, the Sixth Circuit struck a blow for clarity and flatly rejected the EEOC's interpretation of section 706(f)(2). See EEOC v. Anchor Hocking ___ ____ ______________ Corp., 666 F.2d 1037, 1040-41 (6th Cir. 1981). We think that _____ this is the right result. There is nothing in the language of section 706(f)(2) that can fairly be read to limit a district court's discretion in issuing preliminary injunctions. In authorizing the EEOC to "bring an action for appropriate temporary or preliminary relief," the statute does not purport to wrest the final decision on whether relief is warranted from the courts. See id. at 1041 & n.4 (comparing 706(f)(2) with other ___ ___ federal statutes which by their language restrict the district courts' discretion in issuing injunctions). Moreover, this court has consistently emphasized the importance of a showing of irreparable harm in the calculus of injunctive relief. See, ___ e.g., Gately v. Commonwealth of Mass., 2 F.3d 1221, 1232 (1st ____ ______ ______________________ Cir. 1993) (stating that "a federal court cannot dispense with the irreparable harm requirement in affording injunctive relief"), cert. denied, 114 S. Ct. 1832 (1994). In our view this _____ ______ principle, which is predicated on the teaching that "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies," Beacon ______ Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959), is of _______________ ________ paramount importance and should not lightly be set aside. 9 Because we see no evidence in this instance that Congress, in drafting section 706(f)(2), intended the courts to depart from this rule, we hold that the EEOC like any other suitor must meet the familiar four-part test for preliminary injunctive relief. We review the district court's grant of a preliminary injunction for mistake of law or abuse of discretion. See ___ Narragansett Indian Tribe, 934 F.2d at 5; Independent Oil & Chem. _________________________ _______________________ Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co., 864 F.2d ________________________ __________________________ 927, 929 (1st Cir. 1988). A party appealing from either the grant or the denial of a preliminary injunction bears the considerable burden of demonstrating that the district court flouted this standard. See Gately, 2 F.3d at 1225. ___ ______ B. Non-Assistance Agreements. B. Non-Assistance Agreements. _________________________ With these principles in mind, we turn to those provisions of the settlement agreements that prohibit employees from aiding the EEOC in its investigation of charges.4 Astra objects to the portion of the injunction that bans it from either introducing or enforcing these provisions on two grounds. First, it claims that the injunction issued without a satisfactory showing of irreparable harm. Second, it claims that the injunction is unnecessary because it now interprets the settlement agreements to permit various types of communication  ____________________ 4Although the precise terms of the settlement agreements vary, see supra note 2 & accompanying text, we think that many ___ _____ settling parties would interpret these provisions, however they may be couched, as barring them from volunteering information to the EEOC or cooperating with its investigators. 10 with the EEOC. Both claims lack force. In determining whether the district court was justified in finding a significant risk of irreparable harm, we first note that when the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief. See Michigan ___ ________ Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 _____________________________________________ ___________ F.2d 150, 153 (6th Cir. 1991) ("Simply stated, more of one excuses less of the other."); Maram v. Univesidad Interamericana _____ _________________________ de P.R., Inc., 722 F.2d 953, 958 (1st Cir. 1983) (stating that _____________ "these interests must be weighed inter sese"); see also John ___ ____ Leubsdorf, The Standard for Preliminary Injunctions, 91 Harv. L. _________________________________________ Rev. 525, passim (1978). Thus, we start this phase of our ______ inquiry by addressing whether a broad non-assistance agreement is void as against public policy. If it is overwhelmingly clear that the provisions prohibiting settlors from assisting in EEOC investigations offend public policy, a lesser showing that those provisions are causing irreparable harm will suffice to support a preliminary injunction barring their enforcement. We build on bedrock. "[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." Town of Newton v. Rumery, 480 U.S. 386, 392 (1987). ______________ ______ In performing that balancing here, we must weigh the impact of settlement provisions that effectively bar cooperation with the EEOC on the enforcement of Title VII against the impact that 11 outlawing such provisions would have on private dispute resolution. Congress entrusted the Commission with significant enforcement responsibilities in respect to Title VII. See 42 ___ U.S.C. 2000e-5(a). To fulfill the core purposes of the statutory scheme, "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired." EEOC v. Shell Oil Co., 466 U.S. 54, 69 (1984). Clearly, if ____ ______________ victims of or witnesses to sexual harassment are unable to approach the EEOC or even to answer its questions, the investigatory powers that Congress conferred would be sharply curtailed and the efficacy of investigations would be severely hampered. What is more, the EEOC acts not only on behalf of private parties but also "to vindicate the public interest in preventing employment discrimination." General Tel. Co. v. EEOC, ________________ ____ 446 U.S. 318, 326 (1980). In many cases of widespread discrimination, victims suffer in silence. In such instances, a sprinkling of settlement agreements that contain stipulations prohibiting cooperation with the EEOC could effectively thwart an agency investigation. Thus, any agreement that materially interferes with communication between an employee and the Commission sows the seeds of harm to the public interest. See ___ Cosmair, 821 F.2d at 1090 (stating that "an employer and an _______ employee cannot agree to deny to the EEOC the information it 12 needs to advance this public interest").5 To complete the balance we must next address what impact the injunction against non-assistance covenants might have on private dispute resolution. We do not doubt that public policy strongly favors encouraging voluntary settlement of employment discrimination claims. See, e.g., Carson v. American ___ ____ ______ ________ Brands, Inc., 450 U.S. 79, 88 n.14 (1981). Yet we fail to see ____________ that this portion of the injunction creates a substantial disincentive to settlement, and Astra makes no plausible argument to the contrary. Simply put, this monition does nothing at all to promote further litigation between Astra and the settling employee or to disturb the finality of the negotiated settlement. Thus, weighing the significant public interest in encouraging communication with the EEOC against the minimal adverse impact that opening the channels of communication would have on settlement, we agree wholeheartedly with the lower court that  ____________________ 5Cosmair arose under the Age Discrimination in Employment _______ Act (ADEA), 29 U.S.C. 621-634 (1994), and Astra asserts that it is inapposite here because unsupervised settlement agreements that waive employees' claims are more suspect under the ADEA than under Title VII. This assertion is based on a fundamental misunderstanding. The right to assist the EEOC is not a damages- driven right. Indeed, the court below specifically held that settling employees had waived the right to recover damages in either their own lawsuits or in lawsuits brought by the EEOC on their behalf. See Astra, 929 F. Supp. at 521. In contrast to ___ _____ the individual right to recover damages, however, an employee's right to communicate with the EEOC must be protected not to safeguard the settling employee's entitlement to recompense but instead to safeguard the public interest. Hence, it is not a right that an employer can purchase from an employee, nor is it a right that an employee can sell to her employer. Thus, a waiver of the right to assist the EEOC offends public policy under both the ADEA and Title VII. 13 non-assistance covenants which prohibit communication with the EEOC are void as against public policy. We now return to Astra's principal assertion: that, because the EEOC could obtain the information it seeks through the use of its subpoena power, there is no evidence of irreparable harm and, hence, no basis for fashioning the disputed segment of the injunction. This boils down to a contention that employees who have signed settlement agreements should speak only when spoken to. We reject such a repressive construct. It would be most peculiar to insist that the EEOC resort to its subpoena power when public policy so clearly favors the free flow of information between victims of harassment and the agency entrusted with righting the wrongs inflicted upon them. Such a protocol would not only stultify investigations but also significantly increase the time and expense of a probe. In any event, the district court specifically found a likelihood of irreparable harm "because the Commission's ability to investigate charges of discrimination and to enforce anti- discrimination laws has been and continues to be impeded by the chilling effect caused by the offending provisions of the Agreements." Astra, 929 F. Supp. at 520. Given Carter's _____ affidavit and the likely effect of the wording that Astra inserted into the settlement agreements, see supra note 2, we ___ _____ think that this finding is supportable. Thus, there is a sufficient risk of irremediable harm to warrant the issuance of a preliminary injunction addressed to the non-assistance 14 provisions. Astra further argues that an injunction is inappropriate because it does not interpret the settlement agreements as barring communication with the EEOC. This argument is doubly flawed. In the first place, Astra admits only that settlors may answer questions when subpoenaed by the EEOC, and that is much too narrow a concession. In the second place, Astra cannot defeat an injunction now by indulging in a revisionist interpretation of the settlement agreements that would permit full and open communication with the EEOC. "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit . . . ." United ______ States v. Oregon State Medical Soc'y, 343 U.S. 326, 333 (1952); ______ ___________________________ accord Chang v. Univ. of R.I., 606 F. Supp. 1161, 1275 (D.R.I. ______ _____ ______________ 1985). Here, Astra drafted aggressive settlement agreements under which employees pledged "not to assist in any way" in proceedings against it. The district court supportably found that these agreements had in fact chilled communications between the settling employees and the EEOC. Astra's attempts to reinterpret the operative provisions of its agreements when under siege come too late to prevent the issuance of an injunction. We need not add hues to the rainbow. The district court neither misperceived the law nor misused its discretion in enjoining the utilization of settlement provisions that prohibit employees from assisting the EEOC in investigating charges of 15 discrimination. Consequently, employees who have signed such settlement agreements may respond to questions from EEOC investigators and also may volunteer information concerning sexual harassment at Astra to the EEOC.6 C. Non-Filing Agreements. C. Non-Filing Agreements. _____________________ In addition to enjoining Astra from entering into or enforcing the non-assistance provisions of the settlement agreements, the district court also enjoined Astra from entering into or enforcing those provisions that ban employees from filing charges with the EEOC. Astra assigns error. It argues, inter _____ alia, that public policy favors the enforcement of such ____ covenants; that the EEOC will not suffer irreparable harm in the absence of an injunction; and that the restraint exceeds the bounds authorized under 42 U.S.C. 2000e-5(f)(2). Because we agree that the EEOC has made no showing that it will suffer irreparable harm in the absence of this portion of the injunction, we decline to reach Astra's other claims. Our analysis of this issue does not evolve from an exploration of the relation between irreparable harm and  ____________________ 6Though the injunction does not specifically address the confidentiality covenants to which the settlement agreements are subject, the terms of the injunction forbid Astra from enforcing any contractual provisions that impede settling employees from ___ assisting the EEOC in ongoing investigations. Thus, the injunction effectively precludes enforcement of the confidentiality covenants to block the divulgement of relevant information (including divulgement of the entire contents of any particular settlement agreement) to the Commission. We need not probe this point more deeply, because Astra now interprets the confidentiality language as inapplicable to communications between settling employees and the EEOC relevant to an ongoing investigation. 16 likelihood of success on the merits. That inquiry is most utilitarian in instances in which the issue is whether the degree of harm is sufficient to warrant injunctive relief. See, e.g., ___ ____ supra Part II(B). Here, however, there is no significant risk of _____ irreparable harm and that fact alone is dispositive. See ___ Gately, 2 F.3d at 1232. ______ This conclusion rests on the role that the filing of a charge plays in the statutory scheme. The EEOC has no authority to conduct an investigation based on hunch or suspicion, no matter how plausible that hunch or suspicion may be. The reverse is true: the Commission's power to investigate is dependent upon the filing of a charge of discrimination. "[U]nlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence `relevant to the charge under investigation.'" Shell Oil, 466 U.S. at 64 (quoting _________ statute). Once a charge is filed with the EEOC, the situation changes dramatically. The allegations contained in the charge do not narrowly circumscribe the Commission's investigation. Rather, the charge serves as "a jurisdictional springboard" enabling the Commission "to investigate whether the employer is engaged in any discriminatory practices." EEOC v. Huttig Sash & ____ _____________ Door Co., 511 F.2d 453, 455 (5th Cir. 1975). So viewed, the ________ charge is capable of supporting an EEOC investigation into both the discrimination described in the charge itself and into the 17 surrounding circumstances (including a full probing of any evidence of discriminatory practices unearthed during the course of the initial investigation). See EEOC v. General Elec. Co., ___ ____ _________________ 532 F.2d 359, 366 (4th Cir. 1976). Given this set of rules, the EEOC's claim of irreparable harm cannot withstand scrutiny. The EEOC is already investigating three charges against Astra, two of which allege class-wide sexual harassment in the workplace. These charges provide the EEOC with jurisdiction to conduct a thorough investigation into incidents of sexual harassment, invidious practices, and other prohibited conduct that may have occurred at Astra over time. Additionally, the portion of the injunction that prevents the enforcement of the settlement agreements' non- assistance provisions a portion of the injunction that we uphold, see supra Part II(B) ensures that employees will be ___ _____ able to cooperate freely with the EEOC's investigators. The short of it is that, once an injunction issues prohibiting Astra from enforcing the non-assistance covenants, this case offers no prospect of irreparable harm to the EEOC. Thus, the judicial restraint that the district court imposed against enforcement of the non-filing covenants violates the tenet that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." Califano v. Yamasaki, 442 U.S. 682, 702 (1979). ________ ________ This case is an especially attractive candidate for application of the Yamasaki doctrine. The difficult, highly ________ 18 ramified questions that surround the validity of non-filing covenants counsel persuasively against reaching out past what is required during the preliminary injunction phase. Consequently, we believe it was inadvisable and legally incorrect for the district court, on the sparse evidence contained in this record, to attempt to confront the thorny question of whether agreements not to file charges with the EEOC are void as against public policy. Courts should take care not to yearn for the blossom when only the bud is ready.7 In an effort to coax a different result, the EEOC bemoans the increased burden that it would face if it had to compel potential witnesses' cooperation by subpoena. As applied to this portion of the preliminary injunction, the Commission's asseveration is a non sequitur. As long as enforcement of the non-assistance covenants is enjoined, the EEOC's current investigations will not be impeded even if settling parties cannot file additional charges. And as we have already noted, those investigations are sufficiently broad in scope to permit  ____________________ 7We take no view today of the validity vel non of non-filing ___ ___ covenants. The question is close and the answer is not obvious to us. On one hand, a charge is sometimes a prerequisite to action in the public interest by the EEOC; that consideration argues for abrogating such covenants. On the other hand, if non- filing agreements are unenforceable, private settlement of harassment claims will be hindered significantly and employers seeking finality may well insist that employees file charges with the EEOC as a precondition to any settlement; this consideration argues for upholding such covenants. All in all, we conclude that trying to resolve the tension between these laudable but competing goals in a case in which no discernible need for the requested relief exists and no fully developed factual record is available courts potential mischief. 19 the Commission to get to the bottom of the unsavory (but, as yet, unproven) allegations that are swirling around the company. To be sure, we are cognizant of the possibility that additional charges filed with the EEOC perhaps could serve as a basis to expand the temporal scope of the ongoing investigations. Thus, the non-filing covenants, if left undisturbed, theoretically could limit the claims of some class members against Astra, and this limitation might in turn provide a basis for a finding of irreparable harm. But that is sheer speculation on this exiguous record. Absent any hard evidence that anyone who signed a settlement agreement with Astra now seeks to press charges with the EEOC which, if filed, would expand the investigations' scope, the disputed portion of the injunction is unwarranted. If the EEOC's investigations subsequently reveal that such a situation actually exists, that is the time to renew the quest for an injunction against enforcement of the non-filing provisions contained in Astra's settlement agreements. III. CONCLUSION III. CONCLUSION We need go no further. The EEOC will receive full relief from that portion of the district court's injunction which restrains Astra from entering into or enforcing the non- assistance provisions of its settlement agreements. We therefore affirm that portion of the injunction, vacate the portion enjoining Astra from entering into or enforcing non-filing covenants in connection with those agreements, and remand for the entry of a revised decree consistent herewith. 20 Affirmed in part, vacated in part, and remanded. The Affirmed in part, vacated in part, and remanded. The _________________________________________________ ___ stay previously granted is dissolved. Each party shall bear its stay previously granted is dissolved. Each party shall bear its _____________________________________ _________________________ own costs. own costs. _________ 21