Donald PACK, et ux., Appellants,

v.

CITY OF FORT WORTH, Texas, Appellee.

No. 17791.

Court of Civil Appeals of Texas, Fort Worth.

June 2, 1977.

Rehearing Denied June 30, 1977.

Yarborough & Pope, Inc., and Frank H. Pope, Jr., Bedford, for appellants.

S. G. Johndroe, Jr., City Atty., John F. Gray, Asst. City Atty., Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

Donald Pack signed a release for injuries suffered while in the course and scope of his employment for the City of Fort Worth. His suit for those injuries resulted in a summary judgment for the City.

We affirm.

On February 6, 1973, Pack, an employee of the public works department of the City, was repairing a heater suspended from the ceiling of a water department garage, approximately twenty feet above the floor. At the time of the accident he was working on a platform raised by a forklift to a height convenient for that work. Another City truck, being repaired nearby by another City employee, was moved forward with its hood up, blocking the vision of the mechanic who was repairing it, resulting in a collision with the forklift and knocking Pack from the platform to the floor, causing him to sustain serious personal injuries.

Following the fall, the City provided Pack with medical care and full salary for approximately one year.

In February, 1974 Park voluntarily filed an application to retire from employment with the City. The application was approved and he accordingly retired on or about March 31, 1974. Following his execution of an "Employees' Retirement Fund City of Fort Worth Retirement Certificate (Male Employee)" on or about April 8, 1974, he began to receive (and continues to receive) monthly pension checks issued pursuant to the terms of the certificate and retirement ordinances of the City.

Pack later brought this suit against the City for the injuries sustained. He alleged

that all proper notices as required by state law, the city charter, and the code and ordinances of the City of Forth Worth had been timely made and given. The City alleged that Pack had not complied with the notice provisions contained in the city charter. Pack replied that the City, by its conduct, in agreeing within the sixty-day period provided for the giving of notice to settle with him, and other conduct on the part of the City constituted estoppel and a waiver in regard to its notice provisions. Pack further relied upon the Texas Tort Claims Act, offering evidence that the accident occurred on city property; the City had immediate actual notice of the accident; a person from the personnel department, charged with the duty of investigating accidents, made a thorough investigation of it within a few days; and the City paid the medical expenses incurred because of the accident. Pack therefore contends the notice provision contained in Tex.Rev. Civ.Stat.Ann. art. 6252–19, known as the Texas Tort Claims Act, § 16 as amended (1973) had been complied with.

The City also pleaded that Pack's cause of action had been compromised and settled and Pack had filed a full release, which barred this cause of action. In reply, Pack alleged that he thought he was obtaining his retirement pay and did not know the instrument had the effect of releasing his cause of action for personal injuries. The City filed its motion for summary judgment with supporting affidavits and other evidence, and, upon hearing, the trial court granted the City's motion, from which Pack appeals.

Pack's assignments of error all cluster around two main areas—release and notice—and will be treated accordingly.

■ The supreme court, speaking through Justice Greenhill, enumerated the rules governing summary judgment practice in *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.Sup.1965). That court there stated: "Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. (Citations omitted.) In other words, the evidence must be viewed in the light most favorable to the party opposing the motion."

■ More recently, in *Gibbs v. General Motors Corporation,* 450 S.W.2d 827, 828 (Tex.Sup.1970), the supreme court speaking through then Chief Justice Calvert stated, "[T]he question on appeal, as well as in the trial court, is *not* whether the summary judgment proof *raises fact issues* with reference to the essential elements of a plaintiff's claim or cause of action, but is whether the summary judgment proof *establishes as a matter of law that there is no genuine issue of fact* as to one or more of the essential elements of the plaintiff's cause of action. . . . The provisions of Rule 166–A are applicable alike to defendants and plaintiffs who move for summary judgment; the judgment sought should be granted, and if granted should be affirmed, *only* if the summary judgment record establishes a right thereto as a matter of law." (Emphasis the court's.)

An examination of the pleadings and affidavits filed in support of and in opposition to the motion for summary judgment, reveals that Pack's basic complaint is that he did not understand what the release meant. It is entitled "Employees' Retirement Fund City of Fort Worth Retirement Certificate (Male Employee)," and it states it is a release from all claims for " . . . all liability of the City of Fort Worth on account of your employment therewith and on account of your participation in the Employees' Retirement Fund of the City of Fort Worth, . . . ." It does not point out that "all liability" includes personal injuries resulting from that employment. Because he does not allege fraud, we do not determine whether the city purposely misleads its employees, allowing them to lull themselves into holding a false belief, as

Pack avers he held, that he " . . . was releasing the City, Pension Fund, Board of Trustees, and Administrator from any other wage, employment (such as for wrongful termination, sick leave, vacation pay, or wages due claims) or retirement fund claims, and did not understand that [he] was releasing the City of Fort Worth, Texas, from liability for [his] injuries due to its negligence or negligence of its employees." He avers only that he misunderstood the extent of the release, because its language is vague and ambiguous.

■ The rule as to a unilateral mistake, absent fraud, is articulated in *Wheeler v. Holloway*, 276 S.W. 653, 654 (Tex.Comm'n App.—1925, jdgmt adopted.) The court stated, "Some courts, as well as some of the text-writers, hold that neither law nor equity will relieve against a unilateral mistake of fact in the absence of fraud. . . .

"But there are some authorities which, under the broader rules of equity, do relieve against a unilateral mistake of fact, where the party making such mistake shows he used due diligence to avoid such a mistake. We quote as follows, in this connection, from the Supreme Court of the United States in the case of *Grymes v. Sanders*, 93 U.S. 55, 23 L.Ed. 798:

" 'Mistake, to be available in equity, must not have arisen from negligence, where the means of knowledge were easily accessible. The party complaining must have exercised at least a degree of diligence "which may be fairly expected from a reasonable person." ' "

■ Did Pack make a showing that he used due diligence to understand what he was signing? We think not.

The key ordinance of the City, #5226, establishes and provides for a retirement plan for city employees. Section 22 thereunder provides, " . . . it is expressly provided that no member of the Employees' Retirement Fund of the City of Fort Worth shall have the right to sue said City for total disability sustained in line of duty, as heretofore defined, and by virtue of becoming a member he or she accepts the benefits provided by the Employees' Retirement Fund of the City of Fort Worth in lieu of his or her right at law to sue the City for damages in a court of competent jurisdiction. . . ."

Pack, like all other citizens, is presumed to know the ordinances of his City, which have the force of law. That ordinance is written in such a way that he could not have failed to understand the extent of his release, had he but read it.

■ One provision of the contract between Pack and the City is that he will receive these monthly payments for life. The City attached to its affidavit in support of its motion for summary judgment, copies of checks drawn on the Employees' Retirement Fund account and endorsed by Pack, in amounts increasing from $150.00 to $153.00—one for each month from April 1974 through July 1975. In oral argument before this court, Pack's attorney stated he still had no intention of returning the money—that he thought it was his right to accept the benefits of the agreement without having to live with its other consequences. Pack, then, is not trying to rescind the contract altogether, but only its negative aspects. He is trying to reform the contract to comport with his understanding of it—which in turn would require a rewriting of the City's ordinance expressly disallowing the right to file suit and accept the benefits of the Employees' Retirement Fund.

Clearly, Pack has ratified the transaction by his acceptance of its benefits, and cannot now be heard to complain about its terms just because he did not understand them.

One of the most firmly implanted working rules in the field of contracts is well-articulated in the Restatement of Contracts:

"The power of avoidance for fraud or misrepresentation is lost if the injured party after acquiring knowledge of the fraud or misrepresentation manifests to the other party to the transaction an intention to affirm it, or exercises dominion over things restoration of which is a condition of his power of avoidance, . . . ."

Restatement of the Law of Contracts § 484 "Loss of Power of Avoidance by Affirming Transaction" (1932).

If that statement is true in the cases of fraud or misrepresentation, how much more true is it in the case of a simple unilateral mistake, which could not have occurred had the injured party exercised due diligence.

We overrule Pack's points of error dealing with the release.

Because we find that as a matter of law Pack lost whatever cause of action he may otherwise have had by first signing the release and then continuing to accept the benefits of it, and by refusing to do equity by tendering to the City the money he had received under the terms of the contract, thereby ratifying the release, it is unnecessary to determine whether his attempts to notify the City of the accident were sufficient.

We affirm.