**Mary ROGERS, Plaintiff-Appellant,**

v.

**GENERAL ELECTRIC COMPANY, Defendant-Appellee.**

No. 84–2692.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1986.

Kosub & Langlois, James A. Kosub, San Antonio, Tex., for plaintiff-appellant.

---

George P. Parker, Jr., San Antonio, Tex., for defendant-appellee.

Before GEE and JOHNSON, Circuit Judges, and PARKER *, District Judge.

JOHNSON, Circuit Judge:

This is an appeal from a summary judgment in favor of defendant General Electric Company in a sex discrimination suit filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The district court, in granting General Electric's motion for summary judgment, held that the plaintiff Mary Rogers had knowingly and voluntarily signed a release waiving Rogers' Title VII claims against General Electric. This Court affirms the judgment of the district court.

## I. BACKGROUND

On June 15, 1978, General Electric entered into a conciliation agreement with the Equal Employment Opportunity Commission (EEOC) settling an across-the-board commissioner's charge of discriminatory practices. Section VI of the conciliation agreement established a Promotion Incentive Program whereby female and minority male employees who General Electric promoted to certain positions were eligible to receive Bonus payments of up to $800.00. The conciliation agreement specifically provided in section VI(h) that "to receive a bonus payment, each affected employee shall be required to execute a release" in the form "attached as Appendix C" to the conciliation agreement.[1]

The plaintiff in the instant case, Mary Rogers, had been employed by General Electric as an Operations Specialist until she was laid off effective April 29, 1983. After being laid off, Rogers asked General Electric whether she was eligible to receive a promotion incentive bonus under the EEOC–General Electric conciliation agreement because of a promotion Rogers had received in 1982.[2] General Electric advised Rogers that she was entitled to a bonus provided she was willing to sign the release referred to in Appendix C of the conciliation agreement. General Electric forwarded a copy of the release to Rogers accompanied by a note instructing her that a bonus check would be sent as soon as Rogers signed, notarized, and returned the enclosed release. Rogers read the release and after consulting her husband, signed the release on August 8, 1983. The release signed by Rogers provides in pertinent part:

> In consideration of payment by General Electric Company in the sum of $800 to (name) ME Rogers, the undersigned, according to the terms of a document entitled Conciliation Agreement, hereby releases and forever discharges General Electric Company ... from all claims, actions, and causes of action which the undersigned may have ... known or hereafter discovered by the undersigned, on account of, or connected with, or resulting from any violations by General Electric Company relating to ... lay-off ... occurring on or before the date of the execution of this release, of any equal employment opportunity laws, ordinances, regulations or orders; including, but not limited to, Title VII of the Civil Rights Act....

---

* District Judge of the Eastern District of Texas, sitting by designation.

1. Section VI of the conciliation agreement provides, *inter alia,* that:

 In order to receive a Bonus payment, each affected employee *shall be required to execute a release,* a copy of which is attached as Appendix C. *If an eligible employee fails to execute such release, the employee shall not be entitled to a Bonus payment under this Para-*

*graph* and the Company shall be relieved of all liability to the employee with respect to the Promotion Incentive Bonus otherwise payable to the employee under this Paragraph, ... (emphasis added).

2. Rogers had originally inquired regarding her eligibility for a promotion incentive bonus while still employed at General Electric. Her eligibility for such a bonus had not yet been finally determined at the time she was laid off.

If the undersigned has filed a lawsuit, or an outstanding charge, with the Commission or any other agency pertaining to matters covered by this release, the undersigned will promptly request withdrawal of the lawsuit or charge.

The undersigned understands that he/she has the right to consult an attorney of his/her choice and/or the EEOC's Compliance Review Official regarding this release; and knowing and understanding so, the undersigned as his/her own act voluntarily accepts the above sum in full settlement hereof without duress, coercion, undue influence or otherwise.

On September 13, 1983, approximately five weeks after signing the release, Rogers filed a charge of discrimination with the EEOC alleging that General Electric terminated Rogers' employment because of her sex. On November 30, 1983, the EEOC dismissed Rogers' charge based on its conclusion that Rogers, by signing the release, had waived all Title VII claims against General Electric.

Rogers then filed the instant Title VII[3] action against General Electric in the United States District Court for the Western District of Texas. General Electric filed a motion for summary judgment which the district court granted based on the court's conclusion that Rogers had knowingly and voluntarily released her Title VII claim against General Electric. Rogers filed timely notice of appeal to this Court. On appeal, Rogers contends that the release (1) violates public policy, (2) was obtained by overreaching and deception, and (3) was ambiguous thus preventing a knowing waiver of Rogers' Title VII claim against General Electric.

## II. ANALYSIS

A general release of Title VII claims does not ordinarily violate public policy. *See, e.g., Monyei v. Dresser Industries,* 701 F.2d 171 (5th Cir.1983) ("A general release, or a covenant not to sue, is not ordinarily against public policy."); *Northern Oil Co. v. Standard Oil Co. of Cal.,* 761 F.2d 699, 706 (E.C.A.), *cert. denied,* —— U.S. ——, 106 S.Ct. 73, 88 L.Ed.2d 59 (1985) ("There is no public policy which prohibits an otherwise valid release from operating to bar federal statutory causes of action."); *Richard's Lumber & Supply v. United States Gypsum Co.,* 545 F.2d 18, 20 (7th Cir.1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1326, 51 L.Ed.2d 593 (1977). To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII. *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 856–62 (5th Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976) (voluntary settlement of Title VII claims supported by public policy).

While a release of Title VII claims will not ordinarily violate public policy, an employee may validly release only those Title VII claims arising from "discriminatory acts or practices which antedate the execution of the release." *Allegheny-Ludlum,* 517 F.2d at 853. Thus, an otherwise valid release that waives prospective Title VII rights is invalid as violative of public policy. *See Williams v. Vukovich,* 720 F.2d 909 (6th Cir.1983) (consent decree containing impermissible waivers of future discrimination claims held invalid).

A release waiving rights arising under Title VII must also be both knowing and voluntary. *See Alexander v. Gardner-Denver Company,* 415 U.S. 36, 51, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974) ("In determining the effectiveness of any [Title VII] waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing."). Whether a Title VII release was properly obtained is to be determined by federal rather than state law. *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1208–09 (5th Cir.1981); *see also Northern Oil Co. v. Standard Oil of Cal.,* 761 F.2d

---

**3.** Rogers also sued under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA). The district court dismissed Rogers' ADEA claim. Rogers does not appeal from this dismissal.

at 705 (federal law governs all questions relating to purported releases of federal statutory causes of action). In determining whether a release was knowingly and voluntarily executed, federal law requires that a valid waiver is not to be "lightly inferred". *See Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172 (5th Cir.1976), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976). With the above general principles in mind, this Court reviews Rogers' contentions in the instant case.

 Rogers first contends that the General Electric-Rogers release constitutes an illegal prospective waiver of Rogers' Title VII rights. In particular, Rogers contends that the release is illegal because it applies to claims arising after the date of the EEOC-General Electric conciliation agreement. This contention is without merit. The release, not the conciliation agreement, waived Rogers' Title VII claims against General Electric.[4] In determining whether

the release waived prospective Title VII claims, this Court focuses on the date the release was executed, not the date General Electric executed a conciliation agreement with the EEOC.[5]

Rogers signed the release in the instant case on August 8, 1983, and, by the express terms of the release, waived only those Title VII claims arising "on or before" that date. No future claims were waived nor did the district court apply the release to a claim arising after the release was executed. The asserted Title VII violation, General Electric's termination of Rogers' employment because of her sex, occurred on April 29, 1983, more than three months before Rogers executed the release. Thus, the General Electric-Rogers release does not violate the principles barring prospective waiver of Title VII rights articulated by this Court in *Allegheny-Ludlum*.[6]

 Moreover, contrary to Rogers' contention, the undisputed summary judgment

---

**4.** The EEOC Commissioner's charge that underlies the conciliation agreement, and which raised the issues that the conciliation agreement resolves, was filed on August 31, 1973, almost five years before the conciliation agreement became effective and almost ten years before Rogers was laid off. The conciliation agreement only settled the dispute between General Electric and the EEOC and did not in any way compromise Rogers' Title VII rights. Moreover, the conciliation agreement, to which Rogers was not a party, could not have lawfully compromised Rogers' Title VII rights. *See Allegheny-Ludlum*, 517 F.2d at 838, 848 (agreement "does not purport to foreclose any alternative that may otherwise exist for individuals who had rather litigate than participate in the entire settlement").

**5.** While the release upheld in *Allegheny-Ludlum* only applied to claims arising before the effective date of the *conciliation agreement* involved in that case, the Court focused on the fact that the release applied only to claims antedating execution of the *release*. For example, the Court in *Allegheny-Ludlum* stated that:

[W]e hold that the employee may release not only claims for additional back pay, but also claims for other relief—including injunctive—provided the released claims arise from *antecedent discriminatory events* ... or 'future' effects thereof so long as such effects are casually rooted ... in discriminatory acts or practices *which antedate the execution of the release*, ....

517 F.2d at 853 (emphasis added.)

**6.** This Court finds Rogers' argument that the release was intended to apply only to claims predating the 1978 conciliation agreement unpersuasive. The release clearly and unambiguously states that:

[T]he undersigned, according to the terms of a document entitled Conciliation Agreement, hereby releases and forever discharges General Electric Company .... from all claims, ... *occurring on or before the date of the execution of this release*, ... (emphasis added)

The release was not restricted to claims "occurring on or before the effective date of the conciliation agreement." *Compare Allegheny-Ludlum,* 517 F.2d at 852 (release limited to claims occurring on or before the date of entry of the conciliation agreement).

Given this Court's conclusion that the release applies to claims arising after the date of the conciliation agreement, Rogers contends that the conciliation agreement itself violates public policy. According to Rogers, the 10.6 million dollar promotion incentive bonus fund was established in 1978 to remedy past discrimination. Rogers argues that this Court's construction of the release permits General Electric to use funds designated to remedy pre-1978 discrimination to settle claims arising after 1978. Rogers concludes this use of the bonus funds violates public policy. The instant appeal, however, does not require this Court to determine the validity of the 1978 EEOC–General Electric conciliation agreement and we decline to do so.

proof establishes that Rogers knowingly and voluntarily executed the release. The document executed by Rogers clearly and unambiguously released any claims Rogers had under Title VII regarding her layoff. Contrary to Rogers' assertion, the document she executed was labeled a release and expressly used the term "release" in its text. Before signing the release, Rogers was advised both orally and in writing that she could consult an attorney. Rather than following this advice, however, Rogers chose to sign the document based solely on consultations with her husband.[7] Rogers' deposition testimony indicates that at the time she executed the release, Rogers believed she had a valid discriminatory discharge claim against General Electric. Rather than pursuing legal remedies for that claim, Rogers accepted $800.00 in exchange for a release.[8]

Rogers admitted during her deposition that no one forced her to sign the release. In fact, Rogers was not contacted by General Electric after she had received the release. Moreover, no evidence was introduced indicating fraud or undue influence. In these circumstances, the district court properly concluded that Rogers had knowingly and voluntarily executed the release.

### III. CONCLUSION

The undisputed summary judgment proof established that General Electric was entitled to judgment as a matter of law. The release executed by Rogers did not prospectively waive Title VII claims. Moreover, Rogers knowingly and voluntarily executed the release. Thus, Rogers executed a valid release waiving her Title VII claim against General Electric. Accordingly, the judgment of the district court is

AFFIRMED.

---

**7.** The fact that Rogers did not actually consult an attorney prior to executing the release does not require this Court to find that the waiver was not knowing. *See Mosley v. St. Louis Southwestern Railway,* 634 F.2d 942, 946 n. 5 (5th Cir.), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3032, 69 L.Ed.2d 407 (1981).

---

**8.** Also significant is the fact that Rogers, who characterized herself as an educated person during her deposition testimony, had previously been employed by General Electric to read and analyze complex Department of Defense contracts.