Cheryl ARENDS, Plaintiff,

v.

HOUSTON LIGHTING & POWER
COMPANY, Defendant.

Civil Action No. G–96–570.

United States District Court,
S.D. Texas,
Galveston Division.

July 10, 1997.

Scott Adam Sanes and Chad Matthews, Houston, TX, for Plaintiff.

Maria Wyckoff Boyce and Matthew P. Eastus, Baker & Botts, Houston, TX, for Defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

Now before the Court is Defendant HL&P's Motion for Summary Judgement, dated April 28, 1997. The Plaintiff has responded to Defendant's Motion, although her Response is largely a proforma exercise. This action is one of nine cases filed together against the Defendant, all of which having a tortured procedural history. In an attempt to bring about a prompt resolution of this action, the Court ordered the matter set for a settlement conference on June 30, 1997 at 9:30 a.m. Notwithstanding that Order, neither the Plaintiff nor Plaintiff's counsel appeared for the settlement conference. The Court knows Plaintiff's counsel to be a fine and diligent attorney; therefore, considering the nature of Plaintiff's Response to the instant Motion for Summary Judgment and her lack of appearance in Court, it seems that Plaintiff and Plaintiff's counsel have "thrown in the towel" regarding this matter. Accordingly, for the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.[1]

---

1. The Court emphasizes that its decision on the extant Motion is in no way a sanction against Plaintiff or Plaintiff's counsel. The Court reaches this decision solely on the merits of the case. Plaintiff's counsel has done an admirable job of trying to breathe life into what, for the reasons set forth in this Order, are completely nonexistent claims.

## I. FACTUAL BACKGROUND

Plaintiff worked for HL&P at the South Texas Nuclear Project (STP) from December 1988, through August 1995. On August 1, 1995, HL&P notified 1,843 employees at STP of their eligibility for participation in Voluntary Severance Benefits Plan # 831 (the Plan). The Plan was sponsored by HL&P's parent company, Houston Industries Incorporated. The offer letter for the Plan informed employees that they could elect to participate in the Plan any time during the August 1, 1995–September 19, 1995 election period. Moreover, the letter informed employees that their participation in the Plan was contingent upon signing a "Waiver and Release" form (the Release) during the election period. The Release was revocable for a period of seven days after signing. The offer letter was accompanied by a copy of the Voluntary Severance Benefits Plan # 831 Summary Plan Description and Plan Document, which detailed the terms of the Plan, along with an election form and a copy of the Release.

In exchange for signing the Release, employees were entitled to receive a "lump sum Severance Benefit equal to three (3) weeks of Weekly Base Pay for each full year of Service" up to a maximum of 78 weeks of Weekly Base Pay, as well as the opportunity to continue participating in various employee benefit plans for a stated period of time. An HL&P employee who resigned without signing a Release was not entitled to these benefits. Furthermore, an HL&P employee would not be entitled to lump sum payment described in the Plan if she were involuntarily terminated.

Plaintiff was one of 186 HL&P employees who elected to participate in the Plan. Plaintiff admits that she received the offer letter and accompanying documents. She also concedes that she signed the election form and the Release on August 15, 1995. Finally, Plaintiff does not dispute that she received $15,834.00 in exchange for signing the election form and the Release. To date, Plaintiff has not returned the consideration she received for signing the Release to HL&P, nor has she offered to do so.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED.R.CIV.P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.; See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. FEDERAL CLAIMS

The Fifth Circuit has held that "[p]ublic policy favors voluntary settlement of claims and enforcement of releases." *Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 935 (5th Cir.), *cert. denied,* 513 U.S. 1019, 115 S.Ct. 582, 130 L.Ed.2d 497 (1994). A party may validly waive claims that exist on the day she signs a release, but not future claims. *Rogers v. General Elec. Co.,* 781 F.2d 452, 454 (5th Cir.1986). A release waiving rights arising under Title VII must also be knowing and voluntary. *Id.*

Once the moving party establishes that a former employee signed the release, received due consideration, and then breached the release, the former employee bears the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. *Williams,* 23 F.3d at 935. In determining whether the former employee has met this burden, the Court must examine the following factors:

(1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by counsel or consulted with an attorney; and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. *O'Hare v. Global Natural Resources, Inc.*, 898 F.2d 1015, 1017 (5th Cir.1990). Not all factors need to be present for a release to be valid. *Id.* at 1017–18.

■ In this action, Defendant has clearly met its initial burden of proof regarding the Plaintiff's waiver of claims. It is undisputed that Plaintiff signed the Release. Plaintiff also received a lump sum payment of $15,834 and various fringe benefit extensions which constituted additional consideration to which she was not already entitled. Finally, the plain language of the Release extends to Title VII claims, as well as claims under the Texas Labor Code, "or any other state or federal statutory or common law" causes of action "arising out of or relating in any way to [Plaintiff's] employment with or separation from" HL&P. Thus, the Release clearly encompasses Plaintiff's federal claims of sex discrimination, sexual harassment, retaliation, and unequal compensation.

■ Plaintiff, on the other hand, utterly fails to meet her burden of establishing a question of material fact that the Release was invalid. Plaintiff admits in her deposition that HL&P did not use force or threat of force to make her sign the Release. This admission defeats a defense of physical duress as a matter of law. *United States v. Willis*, 38 F.3d 170, 175 (5th Cir.1994), *cert. denied*, 515 U.S. 1145, 115 S.Ct. 2585, 132 L.Ed.2d 834 (1995).

■ Plaintiff also cannot satisfy the requirements for proving economic duress because there is no allegation that HL&P, in offering the Plan, made a "threat to do some act which the party threatening has no legal right to do." *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. Unit A Dec.1980), *cert. denied*,

454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981). HL&P certainly had both the right to manage its business as it thought best by reducing its workforce and the right to settle any potential employment–related claims. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996). Plaintiff's Response largely catalogues her discrimination and harassment claims, arguing that she did not voluntarily resign her position, but was "forced to resign due to the continuing harassment and discrimination that she was subject to at the work place." However, Plaintiff's claims that the alleged duress pertained to the same alleged discrimination and harassment of which she now complains are insufficient to invalidate the Release. *O'Hare*, 898 F.2d at 1016–17.

■ Furthermore, the circumstances surrounding Plaintiff's execution of the Release demonstrate that she cannot raise a triable issue of material fact on voluntariness under the *O'Hare* factors. Plaintiff concedes in her Response that she had a sufficient period of access to the agreement before signing and that she received consideration in return for execution the Release. Plaintiff does contend that the other four factors would not be fulfilled. The Court disagrees.

First, Plaintiff admits that she is a high school graduate and has two years of college education. Plaintiff also previously interviewed prospective employees in a human resources position and was aware of anti–discrimination laws. Thus, there is no evidence that suggests that Plaintiff was incapable of understanding the consequences of her action by virtue of her education and business experience.

Second, HL&P offered the Release and severance package to over 1800 STP employees on August 1, 1995, as a part of a reduction–in–force. Plaintiff and 185 other employees accepted the Release and severance packages. HL&P was not required to give Plaintiff an opportunity to negotiate an individual package in order for the Release to be valid. Plaintiff's role in deciding the terms of the agreement is merely one of the factors the Court may consider. *O'Hare*, 898 F.2d

at 1017–18. Plaintiff knew that she had a choice of whether or not to participate in the Plan. Thus, there is no evidence that by choosing to participate under the terms given in the Plan, that Plaintiff did not understand what she was doing.

Third, the Release states in plain, simple language that Plaintiff is giving up her right to sue HL&P in return for the severance benefits:

> In exchange for the Company's payment to me of Severance Benefits pursuant to the Plan, which is in addition to any remuneration or benefits to which I am already entitled, *I agree not to sue or file any charges of discrimination,* or any other action or proceeding with any local, state, and/or federal agency or court *regarding or relating in any way to my employment with or separation from* the Company or its affiliates . . .

Plaintiff's Ex. G (emphasis added). The Release also provides a non–exclusive list of various discrimination statutes to which Plaintiff is waiving her rights. Title VII of the Civil Rights Act is the first statute listed. Thus, the Release is clear and unambiguous as a matter of law.

Fourth, the Release expressly states in boldface type that signing it represents an important legal act and that Plaintiff should consult an attorney before signing it. Plaintiff herself admits that she was "aware that this [Release] was an important document." Defendant's Ex. B at 181. The fact that she chose not to consult an attorney when she clearly had the opportunity to do so does not create a fact question as to her ability to knowingly and voluntarily execute a valid Release.

Accordingly, the Court finds that Plaintiff executed a valid Release which waived her right to assert Title VII claims of sex discrimination, sexual harassment and retaliation, and federal claims of unequal compensation. Therefore, Defendant's Motion for Summary Judgment as to all Plaintiff's federal claims is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE.**

## IV. STATE LAW CLAIMS

■ Plaintiff has also alleged state law claims for harassment, discrimination, negligent hiring, supervision and retention, negligence, and intentional infliction of emotional distress. The clear language of the Release waived these claims as well. Furthermore, because the Release is valid under the Fifth Circuit's *O'Hare* test, it also satisfies the less demanding standard under Texas law.

■ Texas law holds that a valid release must be supported by consideration and must indicate that the releasor has received "a satisfaction" of any obligations referred to in the release. *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 70 (5th Cir.1987) (applying Texas law); *Receiver for Citizens' Nat'l Assur. Co. v. Hatley*, 852 S.W.2d 68, 71 (Tex.App.—Austin 1993 no writ) Under Texas law, the defendant must conclusively establish that the plaintiff signed the release and accepted the benefits offered. *Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 242 (Tex. App.—Houston[1st Dist.] 1992, writ denied). Once this is established, the defendant has established its affirmative defense of release as a matter of law. *Id.* It is then the burden of the plaintiff, in order to avoid summary judgment, to directly attack the release or to establish fact issues concerning an affirmative defense in confession or avoidance thereof. *Id.* at 242–43.

There is no evidence before the Court that Plaintiff was not competent to sign the Release. Moreover, the lump sum payment of $15,834 to the Plaintiff constituted adequate consideration for executing the Release as a matter of law. *Hatley,* 852 S.W.2d at 71. Therefore, because the clear language of the Release states that the parties contemplated a waiver of all causes of action "relating in any way to [Plaintiff's] employment with or separation from the Company," the waiver is valid and enforceable under Texas law. *See Brown,* 837 S.W.2d at 242, 244. Finally, Plaintiff's retention of the benefits received in exchange for the Release ratified it; consequently, her proposed defenses, including duress, stress and harassment are ineffective. *See Pack v. City of Fort Worth,* 552 S.W.2d 895, 898–99 (Tex.Civ.App.—Fort

Worth), *writ ref'd. n.r.e. per curiam,* 557 S.W.2d 771 (Tex.1977).

Accordingly, the Defendant's Motion for Summary Judgment as to Plaintiff's state law claims of harassment, discrimination, negligent hiring, supervision and retention, negligence, and intentional infliction of emotional distress is **GRANTED** and those claims are hereby **DISMISSED WITH PREJUDICE.**

## V. CONCLUSION

For the foregoing reasons, Defendant HL&P's Motion for Summary Judgment is **GRANTED** and all of Plaintiff's claims based in federal and state law are hereby **DISMISSED WITH PREJUDICE.** The Court, however, **DENIES** Defendant's request for attorney's fees. All parties are **ORDERED** to bear their own costs incurred herein to date.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order this date, Defendant HL&P's Motion for Summary Judgment is **GRANTED** and all of Plaintiff's claims based in federal and state law are hereby **DISMISSED WITH PREJUDICE.** The Court, however, **DE-NIES** Defendant's request for attorney's fees. All parties are **ORDERED** to bear their own costs incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**