Diane UHEREK

v.

**HOUSTON LIGHT AND POWER COMPANY.**

**Civil Action No. G–96–569.**

United States District Court,
S.D. Texas,
Galveston Division.

March 2, 1998.

Scott Adam Sanes, Houston, TX, R Keith Vaughan, Carabin and Shaw, San Antonio, TX, for Plaintiff.

Maria Wyckoff Boyce, Matthew P. Eastus, Baker & Botts, Houston, TX, for Defendant.

### ORDER GRANTING SUMMARY JUDGMENT AND REQUESTING SUBMISSIONS ON ATTORNEYS' FEES

KENT, District Judge.

Plaintiff brings this case alleging sexual discrimination, sexual harassment, retaliation, and various similar state law claims.

On December 21, 1995, prior to filing this case, Plaintiff signed a waiver of liability and received $43,610.19 from Defendant. Now before the Court is Defendant's Motion for Summary Judgement, dated January 29, 1998. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**. Consequently, all of Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

## I. FACTUAL SUMMARY

The facts of this case are strikingly similar to those of *Arends v. Houston Lighting & Power Co.*, 969 F.Supp. 424 (S.D.Tex.1997), wherein this Court granted summary judgment. Indeed, Plaintiff's claims are identical to those brought by Ms. Arends, and the release at issue in *Arends* is the same release at issue here. Not surprisingly, the end result is also the same.

Plaintiff worked for Houston Light and Power Company ("HL & P") at the South Texas Nuclear Project ("STP") from October 1988, through December 1995. On August 1, 1995, HL & P notified 1,843 employees at STP of their eligibility for participation in Voluntary Severance Benefits Plan # 831 (the "Plan"). The Plan was sponsored by HL & P's parent company, Houston Industries Incorporated. The offer letter for the Plan informed employees that they could elect to participate in the Plan any time during the August 1, 1995–September 19, 1995 election period. Moreover, the letter informed employees that their participation in the Plan was contingent upon signing a "Waiver and Release" form (the Release) during the election period. The Release was revocable for a period of seven days after signing. The offer letter was accompanied by a copy of the Voluntary Severance Benefits Plan # 831 Summary Plan Description and Plan Document, which detailed the terms of the Plan, along with an election form and a copy of the Release.

In exchange for signing the Release, employees were entitled to receive a "lump sum Severance Benefit equal to three (3) weeks of Weekly Base Pay for each full year of Service" up to a maximum of 78 weeks of Weekly Base Pay, as well as the opportunity to continue participating in various employee benefit plans for a stated period of time. An HL & P employee who resigned without signing a Release was not entitled to these benefits. Furthermore, an HL & P employee would not be entitled to lump-sum payment described in the Plan if she were involuntarily terminated.

Plaintiff was one of 186 HL & P employees who elected to participate in the Plan. Plaintiff admits that she received the offer letter and accompanying documents. She also concedes that she signed the election form on September 18, 1995 and the Release on December 21, 1995. Finally, Plaintiff does not dispute that she received $43,610.19 in exchange for signing the election form and the Release. To date, Plaintiff has not returned the consideration she received for signing the Release to HL & P, although she offered to do so in October 1997—more than one and one-half years after bringing this lawsuit, and more than eleven months after Defendant asserted its ratification defense.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment

should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

### III. FEDERAL CLAIMS

■ "Public policy favors voluntary settlement of claims and enforcement of releases." *Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 935 (5th Cir.1994). A party may validly waive claims that exist on the day she signs a release, but not future claims. *See Rogers v. General Elec. Co.,* 781 F.2d 452, 454 (5th Cir.1986). A release waiving rights arising under Title VII must also be knowing and voluntary. *See id.*

■ Once the moving party establishes that a former employee signed a release, received due consideration, and then breached the release, the former employee bears the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. *See Williams,* 23 F.3d at 935. In determining whether the former employee has met this burden, the Court examines the following factors: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by counsel or consulted with an attorney; and (6) whether consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law. *See O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015, 1017 (5th Cir.1990). No single factor is necessarily dispositive in this analysis. *See id.* at 1017–18.

In this action, Defendant has clearly met its initial burden of proof regarding Plaintiff's waiver of claims. It is undisputed that Plaintiff signed the Release. Moreover, Plaintiff received a significant lump-sum payment of $43,610.19, which constitutes additional consideration to which she was not already entitled. Finally, the plain language of the Release extends to Title VII claims, as well as claims under the Texas Labor Code, "or any other state or federal statutory or common law" causes of action "arising out of or relating in any way to [Plaintiff's] employment with or separation from" HL & P. Thus, the Release clearly encompasses Plaintiff's federal claims of sex discrimination, sexual harassment, retaliation, and unequal compensation. The burden now shifts to Plaintiff to show its invalidity. *See Williams,* 23 F.3d at 935.

■ In light of the *O'Hare* factors, Plaintiff utterly fails to meet her burden of establishing a question of material fact that the Release is invalid. Plaintiff plainly admits that she had access to the agreement for 45 days before signing and that she received consideration in return for execution the Release. Plaintiff further admits that she is a high school graduate, graduated from Wharton County Junior College with honors, and received a Bachelor of Science from the University of Houston, graduating with a 3.7 grade point average. Moreover, at the time she signed the Release, Plaintiff had completed 27 hours towards a Master's degree in occupational technology. Moreover, the Release expressly states in boldface type that signing it represents an important legal act and that Plaintiff should consult an attorney before signing. Indeed, as evidence that Plaintiff was aware that the Release was important, Plaintiff consulted her attorney prior to signing the Release—the very attorney who represents her today in this Court.[1] There is absolutely no evidence that even begins to suggest that Plaintiff was incapable of understanding the consequences of her action by virtue of time constraints or her education.

---

1. In her interrogatory answers, Plaintiff states that she did not consult an attorney. In her

deposition, however, Plaintiff states that she told her attorney about the Release prior to signing it.

HL & P offered the Release and severance package to over 1800 STP employees on August 1, 1995, as a part of a reduction-in-force. Plaintiff and 185 other employees accepted the Release and severance packages. As this Court clearly stated in *Arends*, HL & P was not required to give Plaintiff an opportunity to negotiate an individual package in order for the Release to be valid. Plaintiff's role in deciding the terms of the agreement is merely one of the factors the Court may consider. *See O'Hare*, 898 F.2d at 1017–18. Plaintiff clearly knew that she had a choice of whether to participate in the Plan. There is simply no evidence that by choosing to participate under the terms given in the Plan, that Plaintiff did not understand what she was doing. Further, the Release states in plain, simple language that Plaintiff is giving up her right to sue HL & P in return for the severance benefits:

> In exchange for the Company's payment to me of Severance Benefits pursuant to the Plan, which is in addition to any remuneration or benefits to which I am already entitled, I agree not to sue or file any charges of discrimination, or any other action or proceeding with any local, state, and/or federal agency or court regarding or relating in any way to my employment with or separation from the Company or its affiliates . . . .

> I understand that signing this Waiver and Release is an important legal act. I acknowledge that the Company has advised me in writing to consult an attorney before signing this Waiver and Release.

(Def's Ex. D). The Release also provides a non-exclusive list of various discrimination statutes to which Plaintiff is waiving her rights. Title VII of the Civil Rights Act is the first statute listed. This Court finds the Release to be clear and unambiguous as a matter of law.

█ Plaintiff argues that she signed the Release under both economic and physical duress. Plaintiff, however, cannot satisfy the requirements for proving economic duress because there is no allegation that HL & P, in offering the Plan, made a "threat to do some act which the party threatening has no legal right to do." *Lee v. Hunt*, 631 F.2d

1171, 1178 (5th Cir. Unit A Dec.1980). HL & P certainly had both the right to manage its business as it thought best by reducing its workforce and the right to settle any potential employment-related claims. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir.1995), *cert. denied*, 516 U.S. 1047, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996). Moreover, Plaintiff clearly received benefits to which she had no previous right.

█ In support of her duress argument, Plaintiff asserts that she *may* have been taking medication for stress caused by undescribed trouble with unidentified coworkers and her daughter's difficult pregnancy. Plaintiff admits, however, that she could drive, read the newspaper, and perform other tasks requiring mental alacrity. Plaintiff simply provides no medical evidence of any incapacity and no evidence that Defendant knew of her alleged incapacity. Indeed, except for her amorphous assertions, she offers NO EVIDENCE whatsoever that she was incompetent to sign the Release, especially in light of her admission that she told her attorney about it.

█ As further evidence of alleged duress, Plaintiff argues that an EEOC complaint was pending and Defendant did not make clear that execution of the Release precluded that claim. This argument is asinine on its face, especially in light of the clear and unambiguous language of the Release. Plaintiff also argues that she was assigned job tasks "she didn't prefer" in an effort to force her to sign the Release. Plaintiff concedes, however, that the tasks that she describes were routine job tasks appropriate to her job description. These assignments simply do not rise to that level necessary to establish duress.

█ Finally, and most ridiculous of all, Plaintiff makes the preposterous claim that she signed the Release because she feared that some unidentified person would use physical force against her. When asked about this fear in deposition, Plaintiff replied:

> A: I was afraid that I was going to be set up to be physically hurt, that they were going to do something to my automobile to cause me to have a wreck.

I was very upset. One of my good friends that worked as an inspector at another plant, he told me that—he says that they can get even with you. He came out to get in his car, and a truckload of cement had just buried his car when he was working in Louisiana. So he's saying if you cross upper management, they have ways of taking care of you and you better be afraid.

. . .

I had assignments where I had to climb, go up on heights. I had to go into pits where the plug could be put back on top of you. You know, you could be sealed in a hole. There's cases where things like this have happened.

Q.: What proof do you have that anybody at HL & P was going to sabotage your car or drop a wrench on you or seal you up in a vault?

A: That's why I didn't come in [to work]. I didn't want to give them that chance.

Because when Mr. Hadley [Plaintiff's supervisor] told me that I wasn't going to be around [in] six months, he wouldn't specify why and I didn't want to find out.

Q: Is it your testimony that he was saying you'd be killed?

A: I interpreted it that way.

Q: What made you think that he was telling you he was going to kill you or you would be killed?

A: Well, because of the—when someone tells you you're not going to last six months, that you better go, you have to consider all things that they're saying. You can't just think that that's purely how are they going to get rid of me . . . .

Q: You did not consider the possibility— or did you consider the possibility that Mr. Hadley meant that if you didn't take the package you would be involuntarily terminated from employment?

A: I considered it, sure.

(Plf's Depo. at 67–68, 73–74).

Q: So what did he [Mr. Hadley] do that was physically threatening?

A: Well, there was not only—it wasn't so much what he did . . . he could have knocked me in the head . . . .

Q: Did Mr. Hadley or Mr. Torrey or Mr. Logan—did any of them come up to you and physically threaten you to tell you you had to sign this release?

A: You can't make anybody do anything. You can take my hand, you know force my hand to sign my name. Well, not a threat like that.

(Plf's Depo. at 79–82). Besides her subjective beliefs manifested through these patently bizarre statements, Plaintiff presents absolutely *no* corroborating evidence that anyone at HL & P used, or threatened to use, force against her in an effort to make her execute the Release. To the contrary, Plaintiff clearly admits that no one attempted to use force against her or actually threatened to do so. Such admission utterly defeats a defense of physical duress as a matter of law. *See United States v. Willis,* 38 F.3d 170, 175 (5th Cir.1994).

Accordingly, the Court finds that Plaintiff executed a valid Release which waived her right to assert Title VII claims of sex discrimination, sexual harassment and retaliation, and federal claims of unequal compensation. Moreover, any claims made by Plaintiff that the alleged duress pertained to the same alleged discrimination and harassment of which she now complains are clearly insufficient to invalidate the Release. *See O'Hare,* 898 F.2d at 1016–17. Therefore, Defendant's Motion for Summary Judgment as to all Plaintiff's federal claims is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE.**

## IV. STATE LAW CLAIMS

 Plaintiff also alleges state law claims for harassment, discrimination, negligent hiring, supervision and retention, negligence, and intentional infliction of emotional distress. The clear language of the Release waived these claims as well. Furthermore, because the Release is valid under the Fifth Circuit's *O'Hare* test, it also satisfies the less demanding standard under Texas law.

 Texas law holds that a valid release must be supported by consideration and must indicate that the releasor has re-

ceived "a satisfaction" of any obligations referred to in the release. *See Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 70 (5th Cir. 1987) (applying Texas law); *Receiver for Citizens' Nat'l Assur. Co. v. Hatley*, 852 S.W.2d 68, 71 (Tex.App.—Austin 1993, no writ). Under Texas law, the defendant must conclusively establish that the plaintiff signed the release and accepted the benefits offered. *See Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 242 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Once this is demonstrated, the defendant has established its affirmative defense of release as a matter of law. *See id.* It is then the burden of the plaintiff, in order to avoid summary judgment, to directly attack the release or to establish fact issues concerning an affirmative defense in confession or avoidance thereof. *See id.* at 242–43.

■ As previously discussed, there is absolutely no evidence before the Court that Plaintiff was not competent to sign the Release. Moreover, the lump-sum payment to Plaintiff constituted adequate consideration for executing the Release as a matter of law. *See Hatley*, 852 S.W.2d at 71. Therefore, because the clear language of the Release states that the parties contemplated a waiver of all causes of action "relating in any way to [Plaintiff's] employment with or separation from the Company," the waiver is valid and enforceable under Texas law. *See Brown*, 837 S.W.2d at 242, 244. Finally, Plaintiff's retention of the benefits received in exchange for the Release ratified it; consequently, even if her proposed defenses, including duress, stress, and harassment had merit, which they clearly do not, they are precluded by ratification. *See Pack v. City of Fort Worth*, 552 S.W.2d 895, 898–99 (Tex.Civ. App.—Fort Worth), writ ref'd n.r.e. per curiam, 557 S.W.2d 771 (Tex.1977).

### V. CONCLUSION

Although the plaintiff's name differs, this case is virtually identical to one summarily resolved in this Court less than five months ago. *See Arends v. Houston Lighting & Power Co.*, 969 F.Supp. 424 (S.D.Tex.1997). Plaintiff's counsel was informed of the *Arends* decision; moreover, he was informed that the alleged facts and the Release in this case are identical to those in *Arends*. With this knowledge, Plaintiff bull-headedly continued to pursue this patently meritless case. Apparently, Plaintiff's counsel believes that lawsuits against HL & P are a new cottage industry, which even if asserted spuriously, but in sufficient quantities, will eventually result in substantial profits. They are not. This Court makes every reasonable effort to provide a forum for those truly aggrieved. However, the case at bar is pure frivolity and a manifest abuse of judicial process. Such frivolity wastes judicial resources, prevents utilization of the Court by those who truly need judicial action, and also feeds the public's apprehensions regarding abusive and frivolous lawsuits. Plaintiff's counsel is more than welcome to bring cases of merit in this Court; HOWEVER, FUTURE CASES LIKE THIS WILL RESULT IN HARSH SANCTIONS.

Plaintiff's violation of the clear terms of the valid Release have resulted in significant Defendant expense. In any action or proceeding to enforce a provision of Title VII, the Court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. *See* 42 U.S.C. § 2000e–5(k). Defendant is **ORDERED** to submit appropriate documentation regarding attorneys' fees and expenses in this case within thirty (30) days. Any response thereto will be due in twenty (20) days from the date of the filing of the request. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974).

For the foregoing reasons, Defendants' Motion for Summary Judgment is hereby **GRANTED**. All of Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Except for the requested pleadings on attorneys' fees and expenses, the parties are **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course. In due

course, the Court will address the issue of attorneys' fees, and will, at that time, enter a Final Judgment.

**IT IS SO ORDERED.**